Ms. Joffrey, can you hear me okay? Yes, Your Honor. Can you hear me? Yes, loud and clear. So just give us one second to get everything settled and then the floor will be yours. You have reserved two minutes for rebuttal. Is that right? Yes, Your Honor. Great. Okay. Everybody ready? All right. With that, you may proceed. Thank you, Your Honor. Your Honors, may I please the Court? This is Farba Joffrey of Joffrey Law Firm for the appellants. The District Court, in its three-page order dismissing the case without providing leave to amend on the ground of futility, erred in several accounts. First, the District Court dismissed claims against SuttonPark due to the Goneys and Treven's alleged lack of standing during a RICO Act claim. The conclusion that an amendment to cure this deficiency would be futile was an error because there are facts sufficient to support the elements required of the RICO Act. The District Court erred in its conclusion that the Goneys suffered no direct harm because the Goneys are Lindsay's parents and caretakers. Any hardship that befalls Lindsay would naturally and immediately fall to them, given her unique circumstances, and given the fact that they were present and known RICO foreseeable plaintiffs in this case. Moreover, SuttonPark directly targeted the Goneys when they solicited the murder of the Goneys. The District Court erred next when it determined that the Goneys and Treven's injuries were not proximately caused by SuttonPark's conduct I guess we should probably use, not the first name, but initials, right? Sure, I can refer to the minor as T.N. Because the Goneys and T.N.'s injuries were not closely related in the causal chain to SuttonPark's illegal acts, any injury that befalls Lindsay naturally would befall the Goneys and T.N., who is Lindsay's minor child, and SuttonPark's acts, which included buying Lindsay with drugs and coercing her into signing contracts until she lost her entire annuity, is financially damaging to the Goneys who were forced to invest a significantly higher portion of their finances to support their daughter and grandchild, of which whose daughter they had previously set up for life with a valuable annuity. This injury extends further to the damage to T.N.'s mental health and early childhood development, because he was present during most of the drug plying, often alone with his unconscious mother afterwards. Third, the district court erred in ruling that the Goneys' injuries were not foreseeable as consequences of SuttonPark's acts, because the Goneys chased after SuttonPark agents in an attempt to stop them from stripping their vulnerable daughter of her annuity. The Goneys have come into contact with agents of SuttonPark and its subsidiary. Your daughter is not a minor, right? I mean, she's an adult. She's fully capable of handling her own affairs, and there's never been an order of protection or guardianship for her. There has been for the son. Is that correct? That's correct, Your Honor. She did give a power of attorney to her parents after, I guess, she had lost her entire annuity and kind of realized what was going on, which briefly alleged in the original complaint. However, as Judge Menasche had said at the last, I guess, appeal that we did in this matter, she wasn't adjudicated incompetent, but was she rendered incompetent or maybe per se incompetent for a period of time because she was plied with drugs by SuttonPark? Yes, she was. But the Florida court found her settlement enforceable, right? Your Honor, these settlements are very fishy, and there's a lot of – it's a very niche issue. There is a Florida decision that we can't look behind unless I'm missing something. Is there something that I'm missing? No, Your Honor. Okay. So now the problem is that the court here thought that the parents could not sue for what was effectively their daughter's injury, and that's because the expenses they incurred were voluntarily assumed. Why shouldn't that preclude the lawsuit here? Well, Your Honor, we've relied on a case that's certainly not binding in the Second Circuit, but a case that we have relied on with, obviously, persuasive authority, which is the Blue Cross Blue Shield case, which was litigated against Big Tobacco in the Eastern District of New York, where third parties were able to bring derivative claims, and they were able to position them as direct injury, even though that these were providers who were providing extensive medical care to individuals who suffered as a result of Big Tobacco's lies. The court, in that matter, was able to conclude that just because you are not necessarily a direct party that has been injured, such as the case of the Ghanis, it doesn't mean that you're not entitled to some kind of recovery when you're a foreseeable plaintiff. And in this case, Your Honor, we believe that the Ghanis and Tien were foreseeable plaintiffs because Sutton Park knew about them. It's not like Sutton Park had no idea who, you know, the Ghanis or Tien were. Tien was there with Lindsay the entire time. And he was injured directly, you would maintain. Correct. He was injured directly. And Tien and the Ghanis have a power of attorney for him. But we're talking now about their suit, direct suit, and that to me is different because they are – any burdens that they were ended up with were burdens that they chose to take as adults for someone that they loved very much. But it was a matter of their choice, right? Certainly, Your Honor. But again, as I argued previously regarding the Blue Cross case, there's a citation to the law of torts about the loss of consortia, which doesn't necessarily just have to do with a spouse. It could also do with a parent or a child. There could be recovery under that theory of tort law when there's a situation such as this one. Well, I'm not sure what a situation such as this one would mean. It seems to me that you're suggesting any relative is a foreseeable plaintiff because they might have to voluntarily incur care for a loved one or a family member. Is that really what you're saying? No, that's absolutely not what I'm saying, Your Honor. So what's the limiting principle for this view that you're espousing? The limiting principle is that if a defendant knows of an existing party and knows of an existing condition, for example, so if they know that the party that they're dealing with is vulnerable to being taken advantage of because they're addicted to drugs and their parents are constantly in the defendant's face and, for example, they've solicited the murder potentially of these parties who become the plaintiffs, then that's a situation where this is a foreseeable plaintiff. I contend that this is a case-by-case basis, Your Honors. I'm not saying that every single family member has the right or the ability to have standing in a suit like this. I think it is a case-by-case basis where you look at the individual facts, and here it is clear that the defendants knew who the plaintiffs were. They knew exactly who Tian was. They knew who the Ghanis were because they interacted with them directly. I know your time is coming to a close, so I do want to ask you about the child's claim. Is it being brought only as a tort claim? Because the RICO allegations, as I understand it, do not assert injury to business or property of the child but rather personal injury, which I wouldn't think would be sufficient, so I want to be clear as to whether that claim is brought under diversity or as a pending claim just as a tort. The claims that we brought on behalf of Trevin were tort claims. My real question is how do you maintain a RICO claim for the child if you are? Well, we are, Your Honor, and it is because the child has no ability to essentially live because his mother was rent-per-per se incompetent and he witnessed horrific acts. I understand that you have a claim for personal injury, but I am not sure how that is sufficient under RICO, which requires injury to business or property. Well, Your Honor, as a parent, obviously, you have an obligation to your child to support that child, but because of what happened to his mother, which he witnessed, he obviously has no ability to be supported by his mother. You would have to rely, as I said previously, on the grandparents or the state. So the state would be responsible for caring for him or somebody who is just a benefactor. All right. Why isn't the RICO claim time-barred if the starting point is the issuance of the power of attorney to cover T.M.? Well, T.M.'s statute of limitation wouldn't start running until he was 18, I believe. Well, I thought, no, I'm not talking about an R.D. or whatever. I'm talking about the time within which the RICO case was brought in relation to when the injury was known or could have been known reasonably. In other words, isn't there an argument from the other side saying that the statute of limitations was missed by one day because of if you do the day calculations from the power of attorney being issued for T.M.'s care? Oh, I don't think that the day that the statute of limitations or the power of attorney was signed necessarily bars – I don't see any state law that would prohibit him from being able to bring an action based on the power of attorney and when it was signed. In theory, the mother could have given a power of attorney well before that and perhaps it – Yeah, and if so, then that would be an indicator of when the statute of limitations began to run. But even looking at it in the light best suited to you, didn't the statute of limitations begin to run when the power of attorney was signed? And then – But, Your Honor – It wasn't brought after that until one day past the cutoff. Well, I believe we had four years to bring it. I believe he brought it within the four-year timeframe. Okay, well, okay. We'll have to decide that question. All right. So, Ms. Jafferty – oh, I'm sorry, did you have a question? How have you established diversity jurisdiction on the tort claims? I ask that because I didn't see the identification of all the LLC members. Oh, understood. So, the plaintiff is – the plaintiffs are located in the state of Pennsylvania. The defendants here, one is located in the state of Connecticut, and the LLCs are Delaware LLCs. The members of the LLCs – But don't you have to identify the residents of – or the domicile of every member of the LLC? I'm just wondering whether this is premature. Whether you need limited discovery on this or what? That could be the case, Your Honor. There may need to be limited discovery on that because I'm not sure who the – I'm not sure if the individuals still own that LLC that I believe to own the LLC or if they are other corporations that own the LLC, which would be the case now. My limited inquiry to this suggests we've got LLCs owned by LLCs owned by, and there are several chains here. But you conceded you didn't allege the residents of each LLC member. Not each member, correct. We just allege the location of the actual LLCs, the residences of each LLC. All right. So thank you, Ms. Jaffray. You've got two minutes for rebuttal. We'll now hear from your adversaries. You're splitting that. Is it Gekas? Gekas, Your Honor, yes. Mr. Gekas, you have five minutes. May it please the Court, John Gekas from Saul Ewing on behalf of Defendant Sutton Park. Under Article III of the U.S. Constitution, courts are limited – Your Honor, I can't hear Mr. Gekas. Maybe keep the microphone close, Mr. Gekas. Is that better? Raise that up more. There's a button on the left. Is that one better? I can stand in the middle. If I talk louder, does that help? That's fine. Yeah, I hear you. Can you hear me now? Yeah. May it please the Court, under Article III of the U.S. Constitution, courts are obviously limited to deciding cases or controversies, which makes standing an irreducible jurisdictional minimum. In this case, the plaintiffs purport to sue in their own name on behalf of injuries that allegedly happened to a non-party, their daughter, and were caused by another non-party, Liberty. In other words, we've got the wrong plaintiffs suing the wrong defendants. In this case, the so-called loss of Lindsay, the daughter's, annuity payments is a harm that neither the plaintiffs nor the parents – excuse me, neither the plaintiffs, the parents, the gonies, and their grandson, Tien, have any standing to vindicate. And indeed, as Judge Raggi pointed out- Why doesn't Tien have standing, and thus the plaintiffs here, because they have the power of attorney, have standing as to torts against him, what injuries that he may have faced as a result of the actions of a son? Under the tort claims, Your Honor? Under the tort claims, not the RICO. Yeah, I think the tort claims fail for a different reason. Would you focus on that for a minute? Sure. Because there are lots of reasons why the RICO claims may be much more suspect. Yeah. So for starters, the tort claim under the negligence and gross negligence claims, the defendant, Sutton Park, owed no duty to Tien as to the false imprisonment claim, as Judge Hellerstein rightly found. He was never, Tien was never outside the presence of his mother. But if we accept the allegations as true as we're obliged to do at this stage, you basically rendered the mother incapable of caring for her child. And if that's so, does that affirmative action on your part, rendering the mother incapable of care, then transfer the duty of care to you? I don't believe it does. I don't believe there is any case that I am aware of or that the plaintiffs have cited that reached such a proposition. I would note that the power of attorney is limited to this case only and that Tien, I believe, remains under the guard. Well, must we certify it to the state court and find out if they think there's a tort claim if you do that? I'm sorry, I don't follow. Well, it would be a state law claim, right? And you're saying there's no case thus far that recognizes that. So I'm asking whether you think we should certify it to the state court and get them to tell us whether they think when a party takes both a mother and a child into custody, renders the mother incapable of caring for the child, and the child suffers injury, you're the tortfeasor. I mean, we would let the state tell us whether that's a cognizable tort. Well, I don't think that's necessary at the most minimum level, Your Honor. Well, you don't have a case that says it's not a cognizable tort, right? You're just saying there's no case so far that has had this situation. It is true that I likewise cannot cite such a case. I would say at a minimum, Your Honor, that the RICO claim would be dismissed. And as Your Honor pointed out, there's no federal jurisdiction here. In part due to the failure of the plaintiff to allege the citizenship of the individual members to the LLC. Well, before we get there, can we just continue on the point that Judge Radji started? It seems to me the only injuries that are alleged here are injuries related to emotional distress. That's correct. And so that wouldn't be negligence or gross negligence. That would be intentional infliction of emotional distress, wouldn't it? I don't believe that claim has been pled. Well, I mean, it would seem to me that that's the claim that would be pled where the injuries are emotional distress. Are there any other injuries? Well, I'll ask Ms. Joffrey the same question. I am not aware of any other injuries. And like I said, through now three attempts to plead a claim that can survive dismissal, I don't believe that claim has been asserted. What about the point that I thought that, and I believe Judge Radji was making, that false imprisonment could apply where the mother is incompetent. In other words, her duty is not being able, cannot be carried out as a result of the defendant's conduct. And therefore, Tia would have a claim for false imprisonment via his grandparents. In response to that, Judge, I would note that based on the allegations of the complaint, if they are taken as true, it would have to be some sort of temporary incompetence, which again, there's no case law to support. And I note that Lindsay, the daughter, I believe, remains the guardian of her son, the grandson, Tien. So it's a, it's the right way to put it. It's a particularly convoluted fact pattern that would have to be accepted as true to get there, if there was even case law to support it, which I don't believe that there is. Well, it sounds like we're going pretty far into this case at an early stage of the litigation. And then maybe there should be developed further by remaining on that basis. Well, I mean, those facts haven't been pled based on the facts that have been pled. As Judge Hellerstein found, there is no case law, of course, to support the per se incompetence theory. And even then, Tien was never removed from the custody of his mother. Well, the district court concluded that the child's claims were extinguished because the mother had resolved her claims with Sutton Park. But the case law is pretty clear, right? It's not that simple. She can't just extinguish a child's claims without actually making clear that that's what she's doing. And I think in Florida, you'd have to also get the court to approve such a resolution. I'm not sure that Judge Hellerstein's comments on that point were focused specifically on the tort claims. I think, I believe it was with respect to the RICO claims and the alleged loss of the annuity. I may be mistaken, but that's my recollection of the comment by Judge Hellerstein that you're referring to. I'm a little confused about your false imprisonment argument, because if one had what I would call a very traditional kidnapping at gunpoint, taken out of your home, put in a basement and locked up, mother and child, you're thinking the child has no claim for false imprisonment? Against which? Against the person who came into the home at gunpoint and took the mother and child out. But that's not, respectfully, that's not what's alleged here. What's alleged here is that- No, no, but I'm trying to figure out what it is you think precludes a false imprisonment claim by the child here. The fact that he was always within the care and presence of his mother at all times. No, I'm suggesting to you that in the gunpoint kidnapping, the child is always in the custody and care of the mother. But I think we'd be disinclined to find that the child wasn't falsely imprisoned. But the difference here is that it's not alleged that the mother was kidnapped as well. The mother voluntarily chose to spend her time with the alleged kidnapper. So the mother was there voluntarily and as the guardian of the child brought her child with her. The mother may have been rendered incompetent by the defendant. So I don't think that answers it. Okay. Okay. Okay, thank you. All right, thank you. We'll now hear from Mr. Procia. Am I saying that right? Yes, Your Honor. Okay. Good morning, Your Honors. My name is Anthony Procia from Kauffman, Dulwich, and Volick on behalf of Defendant Appellee Edward Stone. Mr. Stone's role in this situation was he was contacted by Plaintiff Lori and non-party Lindsay in August of 2016 to pursue and figure out advice and recommendations on how to deal with the LLC entities from Sutton Park related to the transfer of the annuity payments. Judge Hellerstein in denying the motion to amend to assert the proposed claims significantly relied upon the retainer agreement that was executed by both Lori and Lindsay where it was limited to advice and recommendations and has a specific other paragraph that excludes litigation being part of the initial retention and if there would be any future litigation, it would be subject to a subsequent agreement between the parties. That never happened here. So what we have here is four claims that were originally alleged in the proposed amended complaint, three of them that are knocked out by the limited scope of representation. It was the Gonies have argued multiple times in just alleged and conclusory fashion that they retained Mr. Stone to sue Sutton Park. However, by the explicit language within the retainer agreement, that just is not true. So two of the allegations with regards to the duty to sue just don't exist. The third claim that got knocked out by the explicit language of the retainer is allegations of use of settlement monies to pay disbursements and expenses that were incurred by Mr. Stone and his firm. There's an allegation of $15,000 and then a separate allegation of $7,000. With regard to the $15,000, that was actually a contingency that was paid to a Florida lawyer that was actually retained by the Gonies, not by the Gonies because it wasn't Rodney, just like in our case it wasn't Rodney, by Lindsay and Lori. They've retained Florida counsel, yet they have the gall to state in their proposed amended complaint that they had no clue who this was or where this money was going. They literally retained an attorney in Florida to pursue a claim in Florida, executed a written agreement, and then tried to come after Mr. Stone because they had to pay that lawyer part of the settlement agreement. Let me be sure I understand what you're referring to. Is that the fee agreement and the authority to represent with McLaughlin and Stern? Yes, Your Honor. Okay, so that's what we're looking at there. So there's the retention of the attorney with the law firm of McLaughlin and Stern, which is a Florida lawyer which, by the way, they pursued and they obtained money on behalf of Lindsay. And then there's the second one with regard to an allegation of taking $7,000. That's with regard to a second lawsuit, sorry, that's with regard to a second claim, and that was against 123 Lump Sum that goes by some other name with the initials of SAF. The $7,000 was not paid to Mr. Stone. It's documented and it was paid to the private investigator that was retained to track down the shell entities and who should actually be pursued to actually potentially get a resolution on behalf of Lindsay. So in the scheme of this thing, Mr. Stone represents not the plaintiff in this case, but Lindsay is able to effectuate settlements on her behalf for I believe it's about approximately $150,000. Yet there's a claim that somehow he was not entitled to pay his private investigator vendor $7,000 for the research and work that they did. First, under the reality of the engagement agreement, both Lori and Lindsay acknowledged that all fees and costs and disbursements would be paid. So that's what Judge Hellestein ruled on. In addition, that just is under standard practice and customary practice in New York under statute and under case law that basically you have a charging lien or a retaining lien to ensure that you're not vouching and covering a plaintiff so they could go run around the state and sue people. So that's three of the four claims. The fourth claim was with regard to an alleged collusion that was between Mr. Stone and presumably it's with regard to the general counsel of Sutton Park, Fred Love. The allegation is somehow that they were in cahoots together because they have a quote-unquote friendship, that they have a prior business relationship because Mr. Stone was at J.G. Wentworth in the 1980s and J.G. Wentworth purchased Peachtree Capital or something like that about 15 years later. There's no allegation that there was actually an overlap of them, only an allegation that it was this corporate transaction. With regard to allegations that we actually have in the original complaint and also in the proposed complaint, the allegation is limited to that Mr. Stone represented a company called Asta when it did a transaction with an entity that was allegedly owned by Sutton Park. The reality is Mr. Stone represented Asta on the other side of that transaction. The great thing about this case and with regard to the allegation of collusion is plaintiffs rely on this lawsuit by Tierra Douglas in Florida because that's what Mr. Stone should have did on behalf of Lindsay. He should have sued Sutton Park in Florida. And what they did in the Tierra Douglas case is what should have been done on behalf of Lindsay. The reality is Mr. Stone is co-counsel for Tierra Douglas in that Florida lawsuit. They are literally suing Sutton Park. It shows by itself that there is no plausible allegation that Mr. Stone would not sue Sutton Park, would not pursue financial recourse on behalf of a client like Lindsay. Then what we have here is on appeal, after having a complaint, a motion to amend, a two-hour oral argument in front of Judge Hellestein, the first time that plaintiffs raise this alleged violation of Judiciary Law 487 is in the appeal here before this court. Let me ask you about this. Sure. Law question on the tort claims and particularly the malpractice claim. Which law applies? There are different states involved in this case. I believe it's New York. Has everybody operated on that basis? I have not received, recall seeing any objection by counsel regarding to governing law. We invoke New York based on the allegations in the complaint that being pursued against Mr. Stone as a New York lawyer. And with regard to that- Nobody took, New York law is what's been discussed between the parties and what has been subject to the litigation. Correct, Your Honor. I assume if there was actually a conflict of law issue here, it's been waived at this point. It's going to be waived, or it may make no difference. I honestly, because it's never been raised or litigated, don't know the case law for Florida on illegal malpractice. Or Connecticut, frankly, for Mr. Stone, since that's where he resides. With regard to the Judiciary Law 487 claim, just very quickly, it's a statute that relates to an active pending proceeding. That is Court of Appeals case law on the Bill Byrd's case. That's case law that is precedent by the own allegations of plaintiffs in their case. There was never a lawsuit brought on by Mr. Stone, and that's part of the alleged negligence. Therefore, there can't be a pending proceeding where he intended to deceive any party. Second, since they never actually alleged the cause of action in the complaint or in the proposed complaint, they don't actually allege the intent to deceive or any of the specificity that's required under Rule 9. Again, that's Bill Byrd's by the Court of Appeals as to the standards for heightened pleading. And then the final point, Your Honors, I just would like to join in the argument. Don't need to re-litigate it. There's the Article 3 stand in argument here. We have plaintiffs that are suing on behalf of an allegation that there was a negligent representation of their daughter in a lawsuit, and somehow the daughter was harmed, but somehow that leads to the parents being harmed. Judge Sullivan, in one of your cases, I believe it's the EVIP case, if I recall correctly, basically did similar analysis to what's been done in this case. But what does this have to do with your client? I mean, they're alleging that your client was their lawyer. They retained him, right? Well, Lori was, but if you take it to the second step or the third step, the allegations of damages still are Lindsay damages, not Lori damages and not Rodney damages. And T.N., there's not an allegation of a claim asserted by him. So what we're saying is that's the same standards applies to us, too, because there has not been the monetary harm for there to be the injury in fact that applies in the case. All right. Unless Your Honors have any other questions, we rely on the rest of my brief. Thank you very much. Thank you, Justice Croce. We'll now hear from Ms. Jaffrey for two minutes. Thank you, Your Honor. Well, just to touch on an issue that came up in both Mr. Crosha's and Mr. Gekas's arguments, they state that the wrong plaintiff is suing the wrong defendant, and this sort of ties back to an argument that one of Your Honors had brought up early on in this argument, which is there is a web of companies here, and they're correct that there is a lot of ambiguity regarding who is the correct defendant to sue. However, the paperwork demonstrates and the facts point to Sutton Park being the individual entities that are responsible for what happened to the plaintiffs in this matter. They mention a company called Liberty. Liberty was a part of a web of companies that Sutton Park slash 777 Partners owned. Your Honor, there was a point in the argument where one of the judges had mentioned that we're going down a relatively, I guess, long pattern and difficult pattern of facts here. So I will call back to something that Judge Menasche had said in the original oral argument, which is that there may be thin, factual matter in this case because a lot of the facts that are being relied upon are, you know, distant memories at this point, and what is left of the documentation that the plaintiffs have in their possession because one of Edward Stone's, you know, investing groups had held on to all of their documents. We're at the move-to-dismiss stage. There may be thin, factual matter, but it's still factual matter. So while I understand Judge Hellerstein's reservations regarding allowing this claim to proceed, because obviously there's multiple parties involved who are not Lindsay Noel, who was the individual who contracted with Sutton Park, we're at the motion-to-dismiss stage, and all reasonable inferences should be drawn in my client's favor and not in favor of the defendants. If there is discovery that points to the fact that Sutton Park is not liable for anything, that Edward Stone is not liable for anything that's been alleged, obviously they can look for summary judgment, and we are not able to proceed. But at this point, my clients have not even had their day in court. Yeah, but the problem, this is a motion-to-dismiss, so you have to plead some facts. So you have a false imprisonment claim that sort of conclusively states that Lindsay was kidnapped and rendered incompetent, but there's no particulars as to when, where, whether the child was with her at the time. I mean, it's, you know, you can't just rely on conclusions. And so even the proposed amendment complaint doesn't conclude additional facts. So what are the facts that would support this false imprisonment claim? Your Honor, I feel that maybe it's not clear, but because, you know, T.N. was 3 years old when this happened, and we're filing this on behalf of him and not on behalf of Lindsay, but we stated in our complaint that they were taken to a hotel room where T.N. attempted to call his grandmother Lori. And so we're basing a lot of our facts based on Lori's memory because T.N. was 3 years old. I mean, this is an individual who was harmed at a point in his life. You know, memory recall is very difficult. So I don't know that that's a question that's ever been addressed by the Court of Appeals in the state of New York. As I guess one of your honors had suggested earlier, it could be worth certifying to the Court of Appeals to determine that question. But I don't know the answer to that question, Your Honor, because we're basing that fact, which we know of, because Lori picked up the phone and was able to talk to her grandchild who was terrified. We know that that happened because of Lori's experience, not directly from T.N., who couldn't have articulated that. May I just ask you why New York law? I mean, all of this happened in Florida, correct? Why New York law? It seems to me the injury and the tort occurred in Florida. Well, a lot of the parties are based in New York or have a presence in New York. For example, the lawyer, Mr. Stone, he is based in the state of New York. He's licensed to practice in the state of New York. Also, the Sun Park entities, they have a presence in the state of New York. The Ghanis no longer reside in Florida. But why a false imprisonment claim that is New York? Well, Your Honor, we don't see any limitation to bringing it here rather than in the state of Florida. I mean a lot of it is the convenience of counsel, finding counsel to be able to bring a thing like this. I'm not even asking you about where you can bring it, though. That has its own questions. But why isn't it going to be Florida law that would be applied here, even if the action is brought in New York? That's a good question, Your Honor. I don't know the answer to that question. I'll be honest. In any event, you've treated this case as a New York law case, right? Correct. I think that all the parties have, sir. All the parties have. Mr. Boxton. Yeah. All right. Well, we've gone over. I think we've certainly heard the arguments. We will reserve decision, but thank you all.